The Honorable MARSHA J. PECHMAN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

PIERCE COUNTY, *et. al.*,

              Plaintiffs,

    v.

WASHINGTON STATE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES,
*et. al.*,

              Defendants.

NO. 3:23-cv-05775-MJP

DEFENDANTS' RESPONSE TO
PLAINTIFFS' EMERGENCY MOTION
TO REMAND AND IN THE
ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER

## I.  INTRODUCTION

This Court has subject matter jurisdiction over this matter because it is grounded in the ongoing management of state hospitals under federal constitutional principles. This includes this Court's prioritization of state resources toward competency evaluation and restoration because those patients have Fourteenth Amendment rights during criminal prosecution not applicable to civil conversion proceedings, whose respondents are no longer subject to criminal prosecution. While Plaintiffs claim a clear equitable and legal right to immediate, court-directed admission of all civil conversion patients sent to the state by the counties, their claim overlooks the limitations that exist in state hospitals and the ongoing control by this Court over this finite resource. Removal of this action so that the federal question necessarily raised by the Complaint can be considered by this Court is proper because the federal authority governing this finite resource -- the "res" of this action—is raised, disputed, substantial, and capable of resolution of the federal-

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

1

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

state balance approved by Congress. The State's management of available beds in state facilities for behavioral health services has been under federal court injunction for over eight years. More recently, this Court has directed that certain civil conversion patients not be admitted for treatment in state hospitals and that a certain number of beds be available and immediately filled by those patients awaiting competency restoration or evaluation services, subject to substantial *per diem* fines for each patient not receiving such services. Meanwhile, this Court's 2015 permanent injunction continues, directing Defendants to reduce the wait times for defendants in criminal proceedings for competency evaluation and restoration services. Because of these federal court orders, Plaintiffs lack a legal right to claim immediate, on-demand admission of other patients. Furthermore, state law prevents counties from seeking declaratory or injunctive relief over how those beds are allocated. Therefore, their request for relief should not only be governed by this Court, their request for preliminary injunctive relief should be denied.

## II.    FACTUAL BACKGROUND

*A.B. by & through Trueblood v. Washington State Dep't of Soc. & Health Servs.*, Case No. 2:14-cv-1178 (W.D. Wash.) (*Trueblood*) is a federal class action brought against the Department of Social and Health Services (DSHS) almost ten years ago alleging the wait time for admission to the state hospitals for competency evaluation and competency restoration services violate the class plaintiffs' due process rights under the federal constitution. *Trueblood*, Dkt. #1. Following a March 2015 trial, this Court held that in-jail wait times for competency evaluation and restoration services of more than seven days are unconstitutional. *Trueblood*, Dkt. #131. The Ninth Circuit reversed and remanded, and the permanent injunction was modified to set the timeline for evaluation services at 14 days. *Trueblood v. Washington State Dep't of Social and Health Serv.*, 822 F.3d 1037, 1045-46 (9th Cir. 2016); *Trueblood*, Dkt. #228 at 18-19; Dkt. #330 at 32-34. Since then, the parties have negotiated a phased-in contempt settlement and, following a December 11, 2018 fairness hearing, the Court granted final approval of the settlement agreement. Under the settlement agreement, the entry of contempt judgments for inpatient fines

DEFENDANTS' RESPONSE TO EMERGENCY MOTION TO REMAND AND IN THE ALTERNATIVE FOR TEMPORARY RESTRAINING ORDER - NO. 23-2-09161-8

2

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1    were suspended as of December 1, 2018. Under the settlement agreement, these fines continue to

2    accrue, but not be paid, unless the State breaches the settlement agreement. *Trueblood*, Dkt. #599-

3    1. This Court's 2015 permanent injunction continues; implementation of the settlement agreement

4    is ongoing, and continues to be supervised by this Court. *See, e.g.*, *Trueblood*, Dkt. #1009.

5         On July 7, 2023, following the June 12-15, 2023 evidentiary hearing in Seattle in

6    *Trueblood*, this Court entered findings of fact, conclusions of law, and an order finding the State

7    in breach of the contempt settlement agreement, and in further contempt of the court's orders. *Id*.

8    This Court ordered limitations on state hospital admissions apart from competency evaluation or

9    restoration, payment of over $100 million in contempt fines (out of the $290 million currently

10   suspended), new contempt fines to accrue on civil patients who remain in forensic beds, and other

11   relief. *Trueblood*, Dkt. #1009 at 49-52. On August 14, 2023, this Court entered an order

12   modifying the July 7 order, adopting in part the joint proposed modifications submitted by the

13   parties on July 21, 2023. This Court's amended order maintains the July 7 moratorium on

14   admission of non-violent civil conversion patients for treatment in state hospitals, but makes

15   numerous other changes to the July 7, 2023 order, including the requirement that forensic beds

16   be cleared of civil conversion patients occupying those beds, to be immediately filled with

17   members of the *Trueblood* class. *Trueblood*, Dkt. #1033. This Court's findings of fact on July 7

18   included the following:

19        DSHS failed to take swift or meaningful action to stop prioritizing Civil Conversion
          patients over Class Members. Despite the lack of bed space and rising number of
20        Civil Conversion patients at WSH, DSHS waited until December 2022 to adjust
          admission procedures for Civil Conversion patients. (Tr. Ex. 7.) After the changes
21        in admissions took effect, DSHS denied admission to 43 of roughly 160-180 total
          Civil Conversion patients. Even with the change in the algorithm in December
22        2022, the number of Civil Conversion patients increased through February 2023.
          DSHS could have changed the algorithm's prioritization of Civil Conversion
23        patients earlier than it did. DSHS did not stop admitting Civil Conversion patients
          until March 2023. By stopping new admissions of Civil Conversion patients, DSHS
24        has seen a large decrease from over 130 Civil Conversion patients in March to 108
          patients in May 2023. DSHS could have stopped admitted Civil Conversion
25        patients into forensic beds well before March 2023.
26

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

3

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

*Trueblood*, Dkt. #1009 at 32, ¶ 87. The July 7 Order directed that DSHS "immediately cease admitting Civil Conversion patients to state hospitals for ordered civil commitment treatment, except for patients for whom the commitment court has made a special finding of violent felony pursuant to [Wash. Rev. Code] § 71.05.280(3)(b)." *Trueblood*, Dkt. #1009 at 49, ¶ 33.a. Since this Court entered this July 7 Order, DSHS notified counties that it was unable to accept civil conversion patients because such patients do not arrive at state hospitals with such a finding. On August 14, 2023, this Court maintained its moratorium on civil conversion patients, but clarified "except for patients who have been charged with a 'violent offense' under [Wash. Rev. Code §] 9.94A.030(58)." *Trueblood*, Dkt. #1033 at 2, 33.a. Both orders required DSHS to clear its forensic beds within 60 days from July 7 so that *Trueblood* class members may occupy them immediately. *Trueblood*, Dkt. #1033 at 2,3, ¶¶ 33.c, 33.d. Since July 7, DSHS has sent approximately 45 no-admit letters to counties regarding civil conversion patients referred by them to state hospitals, citing the July 7 or August 14 Orders entered in *Trueblood*. Declaration of Kevin Bovenkamp (Bovenkamp Decl.) at 4.

Twenty-two counties and the Washington Association of Counties ("Counties") brought this suit, originally filed in Pierce County Superior Court, seeking declaratory and injunctive relief directing immediate admission for evaluation, without limitation, of felony conversion patients under Wash. Rev Code § 10.77.068. Dkt. #01-2. The Counties also seek immediate, strict enforcement of a thirty-day notice requirement prior to transfer of a civil conversion patient to the community under Wash. Rev. Code § 71.05.425. The Counties allege they "have clear legal rights to ensure that DSHS fully meets its obligation to evaluate civil conversion patients and provide notice prior to the release, transfer, or grant of leave to Committed Patients." Dkt. #01-2 at 14. The Counties also noted a hearing on September 8, 2023, in Pierce County Superior Court to seek a preliminary order seeking the same relief alleged in their Complaint. Dkt. #03-1 at 9.

The Counties bring this suit despite the language in Wash. Rev. Code § 71.05.026 barring them from suing the State for injunctive relief regarding bed allocation in the state hospitals. *Id.*

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

4

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

(counties "shall have no claim for declaratory relief, injunctive relief, judicial review under chapter 34.05 RCW, or civil liability against the state or state agencies for actions or inactions performed pursuant to the administration of this chapter with regard to the following: (a) The allocation or payment of federal or state funds; (b) the use or allocation of state hospital beds; or (c) financial responsibility for the provision of inpatient behavioral health disorder treatment and care."). The state hospitals have one sender of patients for civil conversion cases: the Counties. Nearly all of the patients in state hospitals are sent by Washington counties either under orders from criminal courts to receive competency evaluation or restoration in state hospital or as part of civil conversion proceedings. Bovenkamp Decl. at 2.

DSHS removed this case to this Court under 28 U.S.C. § 1441 because of the federal constitutional law driving the *Trueblood* Orders. The Counties oppose removal and filed an emergency motion for remand, or in the alternative, a temporary restraining order. This Court is now assigned the matter and set the motion for remand under the usual schedule per this Court's local rules. *See* LCR 7(d)(3). This Court advised the parties it would decide this Court's subject matter jurisdictional issues before deciding on any motion for preliminary injunctive relief. Dkt. #9 at 1-2.

## III.    ARGUMENT

**A.    This Court Should Deny Remand Because the Counties' Claim of a Clear Legal Right is Governed by this Court's Protection of Federal Constitutional Rights Under *Trueblood* Over the Finite Resources in State Hospitals and Elsewhere**

### 1.    Removal is available for state claims raising a federal issue

An action filed in state court can be removed when the federal district court could have exercised original jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 28 U.S.C. § 1441. The United States District Courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 and § 1343. Most cases claiming jurisdiction under this standard, commonly known as federal question jurisdiction, meet the "arise under" requirement because the stated cause of action was

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

5

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

created by federal law. *See Am. Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260 (1916). Separately, claims originating from state law can meet the federal question requirement if the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The Supreme Court further clarified the *Grable* test stating "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The Supreme Court stated this "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 514 U.S. at 312.

### 2. The federal issues in this matter are necessarily raised, disputed, substantial, and consistent with federal-state balance

Removal of this case to federal court is appropriate because it meets the test articulated in *Grable* and *Gunn*. Federal questions are "necessarily raised" by the plaintiffs in their complaint which is actually disputed by the parties. The Counties' Complaint alleges that "on July 7, 2023 in *A.B. by & through Trueblood v. Washington State Dep't of Soc. & Health Servs.*, Case No. 2:14-cv-1178 (U.S.D.C. WD WA), the U.S. District Court for the Western District of Washington issued an order (the "*Trueblood* Order") ruling that DSHS [Department of Social and Health Services] breached its duty owed a class of pre-trial detainees by failing to provide timely competency and restoration services in violation of the detainees' Fourth Amendment Rights, and in violation of a settlement agreement DSHS had previously entered with the plaintiff class." Dkt. #01-2 at 11, ¶ 52. The Complaint alleges this Court ordered that DSHS "shall immediately cease admitting Civil Conversion patients to the state hospitals for ordered civil commitment

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

6

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

treatment." Dkt. #01-2 at 11, ¶ 53. However, the Counties erroneously allege "although the *Trueblood* Order was limited to long-term treatment admissions, did not impact short-term evaluation admissions, and had no applicability to other DSHS operated or contracted facilities, DSHS immediately began citing the *Trueblood* Order as a basis to decline providing mental health evaluations to *all* civil conversion patients." *Id.* The State disputes this allegation and the plaintiff's interpretation of the *Trueblood* order. Specifically, the State contends there is no practical difference between "short-term evaluation admissions" and "long-term treatment admissions" as both would take up state hospital beds that are intended by *Trueblood* Orders to be filled by *Trueblood* class members. *See* Declaration of George Petzinger, M.D. (Petzinger Decl.) at 2, 4. At this time, there are no additional civil beds at Department operated facilities, or facilities contracted with the Department, that could absorb patients that meet criteria for civil commitment following an evaluation. Petzinger Decl. at 2. Additionally, civil conversion beds under contract with the Health Care Authority are neither equipped nor contracted to take new admissions or to perform commitment evaluations in accordance with RCW 10.77.086(7). Bovenkamp Decl. at 2; Declaration of Kari Waterland (Waterland Decl.) Ex. 1 at 4. Thus, patients would end up staying in a forensic bed at the state hospital for treatment in violation of the order. Petzinger Decl. at 4. Defendants also dispute that it is declining all civil conversion patients as DSHS is still accepting civil conversation patients charged with a violent felony. Petzinger Decl. at 3-4.

Directly contrary to the Counties' contentions, federal subject matter jurisdiction here is most evident from this Court's *Trueblood* July 7 Order finding a direct correlation between reduced availability of *Trueblood* beds and admissions of civil conversion patients in state hospitals. This includes this Court's finding that DSHS failed to take "*meaningful action to stop prioritizing Civil Conversions*" and realized large decreases in civil conversion patients after stopping new admissions of these patients in March 2023. *Trueblood*, Dkt. #1009 at 32, ¶87 (emphasis added). This Court also found "DSHS could have stopped admitted Civil Conversion

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

7

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

patients into forensic beds well before March 2023." *Id; see also Trueblood,* Dkt. #1109 at 42, ¶15, 43, ¶17 (having the authority to refuse civil conversion admissions).

The State also disputes that it can evaluate civil conversion patients without also providing treatment as this would be a violation of patient rights under Wash. Rev Code §§ 71.05.217; 71.05.210. *See* Petzinger Decl at 2-3. As the plaintiffs have petitioned the Court for an injunction requiring the state to "accept civil conversion patients for civil commitment evaluations" Dkt. #01-2 at 14, ¶ 69, they have necessarily raised a federal question as such an injunction could directly conflict with the State's legal obligation under this Courts order. Any court that adjudicates the Complaint will have to interpret, as part of the Counties' case-in-chief of establishing a clear legal right to the requested injunction, the impact of this Court's *Trueblood* order, which ties directly to federal constitutional rights. Regardless of the outcome, this case is not purely a question of state law. This Court must determine if *its* order issued to protect federal constitutional rights has supremacy over the state law procedures under Wash. Rev. Code §§10.77, 71.05. This makes the federal question an essential element of the case. Prior to the June 2023 *Trueblood* evidentiary hearing, the amicus Counties (several of which are also Plaintiffs in the allegedly state-law lawsuit) recognized the federal issues involved, conceding in their brief there was a "a direct link between DSHS's continuing contempt of this Court's orders for timely competency restoration and civil conversion commitments." *Trueblood*, Dkt. #950-1 at 2.

The federal issues in this case are substantial. The Supreme Court explained "it is not enough that the federal issue be significant to the particular parties in the immediate suit…The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. In *Grable*, the Supreme Court identified the Government's strong interest in the collection of delinquent taxes and the ability of the Internal Revenue Service (IRS) to satisfy its claims from the property of delinquents. *Grable*, 545 U.S. at 315. "The Government thus has a direct interest in the availability of a federal forum to vindicate its own administrative action, and buyers (as well as tax delinquents) may find it

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

8

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

valuable to come before judges used to federal tax matters." *Id.* Here, the federal question revolves around this Court's oversight of the state's mental health system and the federal constitutional rights of numerous Washingtonians. Thus, the federal question here carries substantial importance beyond the immediate parties in the complaint. This is similar to *Grable* as constitutional rights and the power to collect taxes are both fundamental pillars of the federal system that broadly impact the public.

Finally, this matter is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258. In *Grable*, where federal jurisdiction was found in a state quiet title claim with an embedded question regarding IRS notice requirements, the Supreme Court stated "the meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Grable,* 545 U.S. at 315. The Supreme Court then examined the potential impact of its ruling on the volume of federal litigation and whether its decision would attract "a horde of original filings and removal cases raising other state claims with embedded federal issues" *Id.* at 318. The Supreme Court also addressed the importance of adhering to "legislative intent" when finding jurisdiction in matters where there is no cause of action under federal law noting that Congress "indicated ambivalence in this case by providing no private right of action to Grable." *Id.* at 319. The Supreme Court concluded "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.* at 309.

Here, the embedded federal question under dispute is how to interpret this Court's order, which directly implicates federal constitutional rights, and whether this Court's order has supremacy over state law requirements under Wash. Rev. Code §§ 10.77, 71.05. Similar to *Grable*, common sense indicates that the federal court that issued the *Trueblood* order must hear a state law claim that turns on the interpretation of that order and the federal constitutional rights it applies. The Counties' requested relief would reverse the *Trueblood* contempt settlement and

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

9

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1   this Court's orders. Further, allowing federal jurisdiction in this case will not drastically increase

2   the volume of cases brought in federal courts or upset the federal-state balance. The underlying

3   facts of this matter are unique to the same resources, the res of both cases, controlled by the

4   *Trueblood* Orders. The potential impact on case volumes in federal court created by finding

5   federal jurisdiction in this matter is certainly less than the impact in *Grable,* where the embedded

6   federal question was notice requirements when the IRS seizes real property. *See Grable*, 545 U.S.

7   at 310. Finally, finding federal question jurisdiction in this case does not run afoul of the

8   legislative intent of Congress because United States District Courts "have original jurisdiction of

9   all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.

10  §§ 1331, 1343. This complaint, by "necessarily raising" the interpretation and impact of the

11  *Trueblood* Orders, directly implicates the federal constitutional rights of the people of

12  Washington. Thus, this case is ultimately a matter of federal constitutional law and should be

13  heard in federal court. *See* 28 U.S.C. §§ 1331, 1343. Further, federal courts have discretion to

14  amend their orders. "[T]he supervising court has wide discretion to amend the decree to include

15  whatever procedures are required for its efficient operation." *Keith v. Volpe*, 784 F.2d 1457, 1461

16  (9th Cir. 1986). This Court must retain jurisdiction here because it may need to amend its order

17  in light of the Counties' claims.

18      In their Emergency Motion for Remand, the Counties cite *Negrete v. City of Oakland*,

19  46 F.4th 811, 818 (9th Cir. 2022) as authority to remand the matter back to state court. [1] *Negrete*

20  involved police officers for the City of Oakland who were dismissed pursuant to a Consent Degree

21  and federal court order. *Id.* at 814-16. There, the court held:

22          To be sure, there is a potential federal issue involving the question of how to
23          resolve an alleged conflict between the *Allen* Consent Decree and the Charter.
24          Although this question would inevitably arise in this case and may involve a

25  _____
    [1] The Counties also rely on *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002) for the proposition
    that removal cannot be based on mere "frustration of orders [of] the federal court." Dkt. #07 at 9-10. *Syngenta* is not
26  applicable here because it was based on an attempt to use the federal All Writs Act as a basis for federal jurisdiction,
    as opposed to an allegedly state-law action necessarily requiring resolution of federal law, as here.

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

10

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

federal issue, it is not an issue that is necessarily raised within the meaning of *Grable* because it is not an "essential element" of any of the officers' claims…At most, it is a federal issue that may arise as a potential defense. In essence, the officers anticipate that the City will contend that the relied-upon provisions of state law conflict with, and have been displaced by, the Consent Decree, and that the City is thus required to comply with the provisions of the Consent Decree. In considering such a defense, the court would have to determine whether there is a conflict between the Consent Decree and the Charter, and if so, how to resolve that conflict.

*Id.* at 819. The court explained that "a federal issue raised in anticipation of a defense is not sufficient to establish federal question jurisdiction" *Id.* (citing *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) and *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9-10 (1983)). Here, the Counties cannot claim a clear legal right to injunctive relief, an element of their claim, because the *Trueblood* Orders remain in effect and control the res, the resources at issue in this case. Unlike in *Negrete*, here there is a limited resource directly controlled by the *Trueblood* Orders, so that a lawsuit seeking access to state hospital beds *necessarily* impacts and requires interpretation of the *Trueblood* Orders.

*Negrete* is also distinguishable from this case because the fired police officers had no involvement in the litigation creating the Consent Decree and they were not directly attacking the Decree in their complaint. *See Negrete*, 46 F.4th at 819. Here, the Counties concede they are political subdivisions of the State. Dkt. #01-2 at 4-7. The Counties have been aware of the *Trueblood* litigation throughout its almost ten-year life and could have sought intervention. The Counties also appeared as amicus in the *Trueblood* June 2023 evidentiary hearing, making arguments largely echoed in their allegedly state-law Complaint (*Trueblood*, Dkt. #s 950, 950-1), and presented an opening statement (*Trueblood* Dkt. #1014 at 6-21) and closing arguments during that hearing. *Trueblood*, Dkt. #1017 at 506-34. Second, the Counties' complaint directly cites the *Trueblood* order and offers an argument that the state is misconstruing the meaning of this Court's order regarding short-term admissions for evaluation and long-term admissions for treatment. Dkt. #01-2 at 11, ¶ 53. By raising the *Trueblood* order in their Complaint and requesting relief

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

11

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

that would conflict with the *Trueblood* Orders, the Counties have embedded a substantial federal question into state law claims thereby making the federal issue an essential element of the case. *See Rice v. Panchal*, 65 F.3d 637, 645 n.8 (7th Cir. 1995) (recognizing plaintiffs cannot evade federal subject matter jurisdiction by artful pleading). This case is similar to *Grable*, where a question on service requirements under federal tax law became an essential element of a quiet title case under state law. *Grable* at 314-15.[2]

This case is also similar to *Hornish v. King County*, 899 F.3d 680, 691 (2018) where the Ninth Circuit Court of Appeals found federal question jurisdiction under *Grable*. *Id.* In *Hornish,* the court found that the federal question was necessarily raised on the face of the complaint even though it was based solely on a state statute because the plaintiff-appellants requested injunctive relief under state law that "necessarily implicates" the federal Trails Act. *See Id.* at 689. Here, the Counties directly cite the *Trueblood* order, and the constitutional rights it intends to protect, in their Complaint and have requested an injunction that implicates the *Trueblood* order. Dkt. #01-2 at 11, ¶¶52, 53; Dkt. #01-2 at 14, ¶ 69. The court in *Hornish* found the federal question, how to interpret the federal Trails Act, was actually disputed. *Id.* at 689. The parties in *Hornish* offered competing statements of fact on the scope of property rights King County acquired pursuant to a Quit Claim Deed. *Id.* at 689-90. The court reasoned that "the resolution of this dispute turns on an interpretation of the Trails Act." *Id* at 690. Here, the parties have offered competing statements of fact, namely whether civil conversion patients can be admitted for evaluation without violating this Court's order, which can only be resolved by interpreting the *Trueblood* order and the constitutional rights it implicates. *See* Petzinger Decl. at 2-4 The *Hornish* court determined under *Grable* that the Government's strong interest in facilitating trail development and preserving established railroad right of ways for future reactivation of rail service was "substantial."

---

[2] In the alternative, if the Court finds *Negrete* controlling, which it is not, Defendants contend that *Negrete* was wrongly decided and that the dissenting opinion was correct. *Negrete*, 46 F.4th at 821 (Rakoff, J, dissenting). Defendants understand that this Court may not overrule a controlling Ninth Circuit panel decision, but reserve their right to argue for a change in the law in potential subsequent proceedings.

DEFENDANTS' RESPONSE TO EMERGENCY MOTION TO REMAND AND IN THE ALTERNATIVE FOR TEMPORARY RESTRAINING ORDER - NO. 23-2-09161-8
12
ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

*Id.* at 691. The fourth element of *Grable* was met as Congress "acted in the Trails Act to preclude the operation of state laws regarding abandonment" and empowered a federal agency to supervise the process of "railbanking" and railway reactivation. *See id*. Here, there is a strong government interest to follow the *Trueblood* Orders that interpret and apply federal constitutional principles, protect the constitutional rights of *Trueblood* class members, and bind the State and its hospitals and other resources. Finally, this case is similar to *Hornish* where Congress specifically passed the "Trails Act"; here Congress enacted 28 U.S.C. §§ 1331, 1343, thus expressing a legislative intent for Untied States District Courts to have original jurisdiction of all civil actions arising under the Constitution.

In *Grable*, the Supreme Court stated "there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim." *Grable* at 319-320. Here all four elements of the *Grable* test are met. The heart of the Counties' Complaint relates to this Court's orders in *Trueblood* and the constitutional rights they seek to protect. Accordingly, the Motion to Remand should be denied and federal question jurisdiction should be upheld.

**B.** **This Court Should Deny the Counties' Motion For Temporary Restraining Order**

The Counties have not met their burden under Fed. R. Civ. P. 65 of establishing they are entitled to the "extraordinary and drastic remedy" of a temporary restraining order. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014). The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To prevail on a request for a temporary restraining order, a party must show: (1) they are likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of a temporary restraining order; (3) the balance of equities weighs in their favor; and (4) a temporary restraining order is in the public interest. *Pom*, 775 F.3d at 1124; *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In considering

DEFENDANTS' RESPONSE TO EMERGENCY MOTION TO REMAND AND IN THE ALTERNATIVE FOR TEMPORARY RESTRAINING ORDER - NO. 23-2-09161-8

13

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

such a request, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter,* 555 U.S. 7 at 24 (citation omitted). Injunctive relief is never available as a matter of right. *Id.*

The primary purpose of injunctive relief is "to preserve the status quo pending a determination of the action on the merits." *King v. Saddleback Junior Coll. Dist.*, 425 F.2d 426, 427 (9th Cir. 1970); see also *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009). But where, as here, a party seeks to require another party to take affirmative acts, thereby altering the status quo, the requested relief constitutes a "mandatory injunction," which is "particularly disfavored'" in law." *Transwestern Pipeline Co. v. 17.19 Acres of Prop.*, 550 F.3d 770, 776 (9th Cir. 2008).[3] To obtain such extraordinary relief, "the moving party must meet an even higher burden." *Id.*

In particular, by asking the Court to compel the Department to admit civil conversion patients for evaluation under Wash. Rev. Code § 10.77.086(7) and compel the Department to send out notifications pursuant to Wash. Rev. Code § 71.05.425, the Counties are seeking a mandatory injunction. The Court should grant a mandatory injunction only if "the facts and law clearly favor the moving party." *Id.* (internal quotation marks and citations omitted). As articulated below, the Counties have not shown that the facts and the law clearly favor their position and the Court should therefore exercise restraint and deny the Counties' motion.

### 1.   The Counties are not likely to succeed on the merits of their claims

#### a.   The Counties lack standing and Wash. Rev. Code § 71.05.026 precludes the Counties' claims

Federal courts apply the zone of interests test to "determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118,

---

[3] The Ninth Circuit sometimes uses a "sliding scale" standard when considering injunctive relief. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The use of the "sliding scale" can allow the Court to preserve the status quo. *Cottrell*, 632 F.3d at 1134 (citation omitted). In the Motion, the Counties are trying to alter, not preserve, the status quo.

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

14

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

127 (2014). Under this test, the Counties must demonstrate their interests "fall within the zone of interests protected by the law invoked." *Id.* at 129 (quotation marks omitted). In similar fashion, under Washington's Uniform Declaratory Judgment Act, the Counties must demonstrate "whether the interest sought to be protected is 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wash.2d 791, 802, 83 P.3d 419 (2004).

While declaratory judgments and injunctive relief are generally appropriate only in limited circumstances, in the context of the Counties' claims, Wash. Rev. Code § 71.05.026 entirely eliminates the availability of either form of relief. *See Pierce Co. v. State*, 144 Wash.App. 783, 816 (2008). This statute provides that certain entities, including counties, "shall have no claim for declaratory relief, injunctive relief, judicial review under chapter 34.05 Wash. Rev. Code, or civil liability against the state or state agencies for actions or inactions performed pursuant to the administration of this chapter with regard to," among other things, "the use or allocation of state hospital beds." Wash. Rev. Code § 71.05.026(2), (3).

Although the Counties frame their claims as arising from Wash. Rev. Code § 10.77.086, their claims in fact necessarily rely on chapter 71.05 Wash. Rev. Code. Accordingly, the limitations in RCW 71.05.026(2) apply to their requested relief. The Counties argue that this statute is inapposite because it "does not impact enforcement of DSHS's obligations under Wash. Rev. Code 10.77.086." Dkt. #07 at 13, ¶¶ 21-23. This contention fails to account for the unavoidable interplay of the two statutes. Wash. Rev. Code 10.77.086 does not operate as though civil conversion patients do not occupy state hospital beds under Wash. Rev. Code 71.05. In fact, without reference to chapter 71.05, it would not contain any meaningful direction regarding the Department's responsibilities with respect to civil conversion patients. Any claims regarding the Department's duties under Wash. Rev. Code 10.77.086 cannot be disentangled from the Department's duties under Wash. Rev. Code 71.05.

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

15

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

The Counties rely on Wash. Rev. Code 10.77.086(7)(a), regarding felony defendants found incompetent, and not regaining competency within a period of time. The statute directs the defendant be committed "for evaluation for the purpose of filing a civil commitment petition under chapter 71.05 RCW." Wash. Rev. Code § 10.77.086(7)(a). From there Wash. Rev. Code 71.05 governs. *See* Wash. Rev. Code §§ 71.05.280(3), 290 (3), 320(4); *see* Dkt. #07 at 2. Wash. Rev. Code § 10.77.086(7)(a) creates the requirement for a court order, but for the Department to proceed they must do so under Wash. Rev. Code 71.05. Here, the Counties' claimed responsibilities by DSHS are under Wash. Rev. Code 71.05 and, therefore, governed by Wash, Rev. Code § 71.05.026(2). Because Wash. Rev. Code § 71.05.026 bars the Counties' requests for injunctive and declaratory relief and deprives them of standing, they cannot show that they are likely to succeed on the merits.

The Counties' arguments to the contrary fail. They cannot argue that Wash. Rev. Code § 71.05.026 only applies to "actions or inactions performed pursuant to the administration of this chapter [71.05 RCW]" and does not impact the enforcement of Wash. Rev. Code § 10.77.086 because any order under Wash. Rev. Code § 10.77.086 depends on the procedures in chapter 71.05 Wash. Rev. Code. Dkt. #07 at 13, ¶¶ 16-23. Second, the Counties contend that Wash. Rev. Code 71.05.026 does not apply to their requested relief because the Counties "neither request financial reimbursement nor challenge DSHS's allocation of funds or state hospital beds" but only seek DSHS's compliance to evaluate civil conversion patients at any facility operated or contracted by DSHS. *See* Dkt. #07 at 14, ¶¶ 2-5. This cramped reading of the statute cannot be true since state hospital beds are a finite resource, and an order compelling the Department to admit patients would directly dictate how the Department allocates state hospital beds. *See* Petzinger Decl. at 3-4. The Counties' interpretation would make the statutory language almost meaningless because plaintiffs could simply craft their complaints without using the words "allocate" or "reimburse."

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

16

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1       The Counties further point to the newly implemented portion of Wash. Rev.

2   Code § 10.77.086(7)(a) to support their argument that their requested relief would not implicate

3   the allocation of state hospital beds. *See* Dkt. #07 at 14, ¶¶ 1-3. The new language in Wash. Rev.

4   Code § 10.77.086(7), which took effect on May 15, 2023, now allows a defendant "to be

5   committed to the department for placement in a facility operated or contracted by the department

6   . . . for evaluation for the purpose of filing a civil commitment petition under chapter 71.05 RCW."

7   Wash. Rev. Code § 10.77.806(7)(a). The Counties argue that because this provision allows for a

8   defendant to be sent to a facility operated or *contracted* by the Department, Wash. Rev. Code

9   § 71.05.026 does not apply, as their requested relief is not limited to the use of *state* hospital beds.

10  *See* Dkt. # 07 at 15, ¶¶23-25. This argument also fails because there are no facilities contracted

11  by the Department for this purpose. Bovenkamp Decl. at 2. As there are presently only the finite

12  number of state hospital beds, once again, any directive requiring admission directly speaks to

13  the allocation or use of state hospital beds. *See* Petzinger Decl. at 3-4. Because the Counties are

14  seeking relief that would necessarily entail a change in the allocation of this finite resource, Wash.

15  Rev. Code § 71.05.026 once again applies and this specific relief is statutorily barred. Their

16  requested remedy does not maintain the status quo, but instead seeks reallocation of the finite

17  resources that currently exist for admitting patients.

18      Alternatively, on similar grounds, the Counties' request for the extraordinary mandamus

19  relief fails. Such extraordinary relief is only available "where a state official is under a mandatory

20  ministerial duty to perform an act required by law" *Freeman v. Gregoire*, 171 Wash.2d 316, 323,

21  256 P.3d 264 (2011). The mandate must define or specify the precise act to be done or prohibited,

22  defining "the duty with such particularity 'as to leave nothing to the exercise of discretion or

23  judgment.'" *Id.* Here, a host of discretionary functions related to the ongoing management of a

24  behavioral health system already under a federal injunction belie any claim that mandamus lies

25  to direct a particular act or to prohibit one. These include discretion over bed allocation in state

26  hospitals free from county interference under Wash. Rev. Code §71.05.026. These also include

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

17

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

compliance with the *Trueblood* Orders and the need for ongoing management under those orders, and other factors. These discretionary circumstances and circumstances make the grant of mandamus highly unlikely.

**b.    The Counties' requested relief is prohibited by *Trueblood***

The Counties have also failed to establish that they are likely to succeed on the merits, because their requested relief necessarily requires interpretation of, and is also in direct conflict with, the *Trueblood* Orders. *Trueblood*, Dkt. #1009 at 49-52; Dkt. # 1033. These are orders the Department must follow, in addition to the ongoing 2015 permanent injunction that wait times for competency restoration and evaluation patients be reduced. Trueblood Dkt. #131 at 22-24.

Despite this Court's orders, the Counties now ask this Court to contradict the *Trueblood* Orders, requiring DSHS to admit all civil conversion patients for evaluation for the purposes of civil commitment pursuant to Wash. Rev. Code 71.05. The Counties argue that this relief is compatible with the orders in *Trueblood*, because they claim that the *Trueblood* Court barred only admission of civil conversion patients for civil commitment *treatment* and they are requesting that DSHS admit these patients for *evaluation* only. See Dkt. #07 at 14, ¶¶ 13-19. This argument relies upon the misunderstanding that it is possible to separate an evaluation from treatment under Wash. Rev. Code § 10.77.086 and Wash. Rev. Code 71.05. However, evaluation and treatment are not severable; common sense, medical practice, and the legislative intent behind Wash. Rev. Code 71.05 demonstrate that they go hand-in-hand.

As discussed in detail above, Wash. Rev. Code § 10.77.086 and Wash. Rev. Code 71.05 are interdependent, rendering it impossible to meaningfully separate evaluation from treatment under the law. Moreover, it is similarly impossible to separate the two in practice. When a patient is admitted for evaluation for the purpose of civil commitment under Wash. Rev. Code § 10.77.086, treatment begins immediately. Petzinger Decl. at 2-3. The patients are not segregated into "evaluation only" and "evaluation plus treatment" camps, but rather, accepted as a whole and treated in the same fashion. *Id*. Upon admission, all patients are assigned a psychiatric

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

18

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1   prescriber, psychologist, and a medical doctor. *Id.* These providers review the patient's history,

2   complete a physical evaluation, and complete a psychological evaluation in order to develop a

3   treatment plan. *Id.* This treatment plan determines whether to continue administering currently

4   prescribed medications or to order new medications. *Id.* The goal of the treatment plan is to

5   determine what the patient needs in order to be stabilized. *Id.* Once the treatment plan has been

6   developed, the psychologist evaluates the patient to determine if they meet the legal criteria for

7   Civil Commitment. *Id.* Thus, treatment occurs both before and throughout the process of

8   evaluation.

9         The Department treats these patients upon admission in part because treating these

10  afflictions is precisely the legislative intent of Wash. Rev. Code 71.05. *See* Wash. Rev.

11  Code § 71.05.010. To do otherwise would violate legislative intent and the statutorily enumerated

12  rights of these patients. The statutory scheme is intended "to protect the health and safety of

13  persons suffering from behavioral health disorders"; "to provide prompt evaluation *and* …

14  treatment of persons with serious behavioral health disorders"; and for the continuity of care for

15  such "persons with serious behavioral health disorders." Wash. Rev. Code § 71.05.010(a), (c), (e)

16  (emphasis added). Further, involuntarily detained patients have explicit and enumerated rights

17  while in the Department's care. *See* Wash. Rev. Code §71.05.217. This statute lists a number of

18  rights for these individuals, including the "right to individualized care and adequate treatment"

19  and the right to "discuss treatment plans and decisions with professional persons." Wash. Rev.

20  Code §71.05.217(1)(g), (h). It is clear that the legislature intended the treatment of patients to be

21  paramount under Wash. Rev. Code 71.05 and any attempt to sever treatment from evaluation

22  undermines the entire premise of this chapter and what is in the best interests of patients with

23  serious behavioral health disorders.

24        Even taking the Counties' claim at face value, namely, that it is possible to separate

25  evaluation from treatment under Wash. Rev. Code 10.77 and 71.05, any relief compelling the

26  Department to admit patients for *evaluation only* would still be incompatible with the *Trueblood*

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

19

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1    Orders. Since a finite number of beds exist, a bed allocated for an evaluation only would be one

2    fewer bed available for *Trueblood* class members. *See* Petzinger Decl. at 3-4; Bovenkamp

3    Decl. at 4-7. Further, over the past several years, "approximately 80% of felony conversion court

4    orders lead to a civil commitment to the state hospital by the superior court following admission,

5    evaluation, and the filing of a civil commitment petition." Dkt. #1009 at 9, ¶¶ 5-8. Given that 80

6    percent of felony conversion court orders lead to civil commitment, even if these patients were

7    admitted for a civil conversion "evaluation" only, such evaluations would overwhelmingly result

8    in civil commitment for a period of 90 to 180 days. But the civil commitment of these patients, if

9    they were non-violent offenders, would violate the *Trueblood* orders. *See* Dkt. #1033 at 2. No

10   further court order should require the Department to admit these patients in violation of this

11   Court's *Trueblood* Orders, while subjected to steep daily fines or release patients into the

12   community after a short evaluation period, where 80 percent of these patients are in need of

13   treatment. This is separate and apart from the absurd, resulting scenario in which the patient is

14   evaluated and found committable, only to be released. Accordingly, because the Counties'

15   requested relief conflicts with the *Trueblood Or*ders, the Counties success on the merits in this

16   matter is unlikely.

17        **2.      The Counties cannot show irreparable harm**

18        The Counties also cannot show that they will suffer irreparable harm in the absence of

19   preliminary injunctive relief. Motions for preliminary injunctive relief require evidence showing

20   a likelihood of irreparable harm, and may not rely on mere allegations. *Herb Reed Enterprises,*

21   *LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013).

22   Speculative injury does not constitute irreparable injury sufficient to warrant a preliminary

23   injunction. *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 472 (9th Cir.1984).

24   Additionally, a plaintiff must do more than allege imminent harm sufficient to establish standing;

25   instead, the plaintiff must demonstrate immediate threatened injury as a prerequisite to injunctive

26

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

20

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

1  relief. *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1022 (9th Cir. 2016) (citing

2  *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)).

3       First, the Counties claim that the potential civil conversion patients themselves will

4  experience irreparable harm in that they will go without treatment. However, "[i]n the ordinary

5  case, a party is denied standing to assert the rights of third persons." *Village of Arlington Heights*

6  *v. Metro Housing,* 429 U.S. 252, 263 (1977) *(citing Warth v. Seldin*, 422 U.S. 490, 499 (1975).

7  Thus, the Counties cannot prevail based on alleged irreparable harm to third parties. And, as

8  discussed in detail below, the plaintiffs requested relief would not ameliorate this alleged harm in

9  any event.

10      Next, the Counties claim "DSHS's refusal to evaluate these patients can also result in

11  harm to the communities to which they return." Dkt. #07 at 18, ¶¶ 3-4. The Counties further state

12  that if the evaluation process is shifted to local providers that this will somehow "lead to the rapid

13  release of many former defendants into the community" and many of these defendants "will not

14  have current housing, current outpatient mental health services, or other supports in the

15  community." Dkt. #07 at 18, ¶¶ 3-27. These arguments are speculative and do not sufficiently

16  demonstrate immediate threatened injury. In addition, this is not a harm particularized to the

17  Counties as governmental units, but is generalized, alleged harm to their constituents. Further, it

18  is unclear how the Counties' requested relief directing the Department to admit civil conversion

19  patients for *evaluation only* would rectify this alleged harm to the community at large. At best,

20  the Counties' requested relief would pause the alleged injury for 120 hours for each civil

21  conversion patient admitted for evaluation only, as they would be discharged back into the

22  community shortly after evaluation without any treatment or discharge planning. *See* Petzinger

23  Decl. at 2.

24      Finally, the Counties claim they will suffer irreparable harm, because non-conversion

25  patients would be forced to compete with conversion patients for scarce resources and the court

26  systems and prosecutors will be strained by "patients who commit new offenses as a result of

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8                        21                    ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

their failure to obtain mental health treatment." *See* Dkt. #07 at 19, ¶¶ 3-14. This alleged harm is also highly speculative, especially as only non-violent felony conversion patients would be released under such circumstances. Dkt. #1033 at 2. Again, while the Counties claim harm from a lack of mental health treatment, they contend their requested relief is not for treatment, but for evaluation only. The Counties cannot have their cake and eat it too. Either they are really seeking treatment for patients, despite disclaiming any intent to do so, or they cannot allege harms from untreated patients. Ultimately, the Counties have not met their burden as they have not shown that they will suffer imminent harm in the absence of a preliminary injunction.

In any event, the Counties still have other processes available to them under the Involuntary Treatment Act.[4] They may refer their cases to their DCR or petition for involuntary treatment under Wash. Rev. Code 71.05 based on grave disability or threat of harm to self or others. Wash. Rev. Code § 71.05.230. The Counties claim that these processes are inadequate; however, as of August 2023, the Health Care Authority (HCA) has contracted for 174 traditional ITA beds in the community along with 77 additional beds that cater to civil conversion patients who have stabilized during the admission and treatment process in the state hospital. Declaration of Waterland Decl at 3; Bovenkamp Decl. at 2. Additionally, the HCA has approximately 425 civil beds currently under contract aimed at accommodating those in the civil system. These beds include crisis stabilization centers, traditional 14 and 90 day ITA beds, and beds dedicated to accept felony conversion patients. Waterland Decl. at 3. The HCA anticipates that this mixture of beds will reach 1000 by the end of 2025. *Id.* In total, since July 2019 the HCA, DSHS, and Commerce have invested more than $1.7 billion dollars in behavioral health. Waterland Decl. at 3-4. These alternatives would also address the types of harm the plaintiffs are alleging, which further demonstrates that a mandatory injunction is not necessary to prevent irreparable harm.

---

[4] Similarly, regarding their alternative request for mandamus, the Counties overlook their own reliance in their briefing on existing court orders for admission. The Counties are parties to those proceedings and can attempt enforcement through those proceedings. The Counties argue DSHS's duty is mandatory because of court orders, but then say argue that mandamus lies because there are no other available legal remedies.

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

22

**3.      The balance of the equities does not weigh in the Counties' favor**

In exercising their discretion, courts of equity are required to carefully consider the public consequences of granting the extraordinary remedy of injunctive relief. *Winter v. Natural Resources Defense Council, Inc.* 555 U.S. 7, 24 (2008). The consequences to the public of the requested injunctive relief would be significant. It would slow the forward progress being made by DSHS in timely admitting *Trueblood* class members for restoration treatment, undo the strides made in the *Trueblood* litigation, and thwart future compliance with the *Trueblood* Orders. If DSHS were ordered to admit all civil conversion patients for evaluation, *Trueblood* class members will suffer and compliance with *Trueblood* Orders would be impaired, as there would be fewer beds available for competency evaluation and restoration treatment. *See* Petzinger Decl. at 4. Additionally, there would be little, if any, countervailing benefit from evaluating, but not treating, this civil conversion patient population. The balance of equities does not weigh in the Counties' favor.

**4.      Temporary injunctive relief is contrary to public interest**

"[When] an injunction is asked which will adversely affect a public interest ... the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312-13 (1982). As discussed above, the proposed relief would have negative consequences for *Trueblood* class members. Reducing the number of beds available to class members would only add to the restoration waitlist by forcing class members to wait longer for competency restoration as civil conversion patients typically occupy a state hospital bed four-to-five times longer than class members awaiting competency restoration. Dkt. #1009 at 29, ¶¶ 1-3. Accordingly, the Counties' requested relief would be contrary to the public interest and thus should be denied.

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

23

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565

**5.      The Court should also deny the Counties' requested relief regarding notice requirements**

As for the Counties' claim regarding statutory notice requirements, they also have not met their burden to establish that they are entitled to a temporary restraining order. In this regard, the Counties have not shown that they will be successful on the merits of their claim. Rather, they simply state that the Department has departed from the notification process detailed in Wash. Rev. Code § 71.05.425. The Counties point to notice sent by the Department on August 2, 2023, to various agencies notifying them of pending patient discharges. *See* Dkt. #07 at 21, ¶¶ 2-5; and Dkt. #3-1 at 165-66, 347, (Vasquez Decl. Ex. D). However, the Counties' do not establish how this notice is insufficient under Wash. Rev. Code § 71.05.425 and thus, they fail to demonstrate that they are likely to prevail on the merits of this claim. Additionally, the Counties have failed to make any showing of irreparable harm resulting from the status quo. Nor do they show how the equities and public interest favor this injunction related to notice. Indeed, they have failed to satisfy each of the required prongs necessary to warrant a temporary restraining order as to this claim. Accordingly, the Counties have not met their burden for injunctive relief and their request should be denied.

## IV.      CONCLUSION

For all of the foregoing reasons, this Court should deny the Counties' motion for remand and the Counties' motion for temporary injunctive relief.

RESPECTFULLY SUBMITTED this 18th day of September, 2023.

ROBERT W. FERGUSON
Attorney General

*s/Daniel J. Jjudge*
_____
DANIEL J. JUDGE, WSBA No. 17392
*Senior Counsel*
ALEC C. GRAHAM, WSBA No. 56590
DEREK MILLIGAN, WSBA No. 59651
*Assistant Attorneys General*
*Attorneys for Defendants*

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

24

1

**CERTIFICATE OF SERVICE**

2
I, *Rebecca Leigh,* state and declare as follows:

3
I am a citizen of the United States of America and over the age of 18 years and I am

4
competent to testify to the matters set forth herein. I hereby certify that on the date indicated

5
below, I electronically filed with foregoing document with the Clerk of the Court using the

6
CM/ECF system, which will send notification of such filing to the following:

7
Paul J. Lawrence, WSBA No. 13557

8
Ian D. Rogers, WSBA No. 46584
Shweta Jayawardhan, WSBA No. 58490

9
Pacifica Law Group, LLP
1191 Second Avenue, Suite 2000

10
Seattle, WA 98101
paul.lawrence@pacificalawgroup.com; ian.rogers@pacificalawgroup.com;

11
shweta.jayawardhan@pacificalawgroup.com

12
In addition, a copy of this document and any attachments has been e-mailed and mailed

13
to the following parties who are not CM/ECF participants via US Mail, postage prepaid:

14

15
Marcus Miller
Pierce County Prosecuting Attorney's Office

16
930 Tacoma Ave S Rm 946
Tacoma, WA 98402-2171

17
marcus.miller@piercecountywa.gov

18
I certify under penalty of perjury under the laws of the state of Washington that the

19
foregoing is true and correct.

20
Dated this 18th day of September 2023.

21

22

23
*s/Rebecca Leigh*
REBECCA LEIGH

24
Paralegal

25

26

DEFENDANTS' RESPONSE TO
EMERGENCY MOTION TO REMAND AND
IN THE ALTERNATIVE FOR TEMPORARY
RESTRAINING ORDER - NO. 23-2-09161-8

25

ATTORNEY GENERAL OF WASHINGTON
7141 Cleanwater Dr SW
PO Box 40124
Olympia, WA 98504-0124
(360) 586-6565