HONORABLE MARSHA PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PIERCE COUNTY, ASOTIN COUNTY,
CLALLAM COUNTY, COWLITZ
COUNTY, DOUGLAS COUNTY,
GRANT COUNTY, GRAYS HARBOR
COUNTY, ISLAND COUNTY,
JEFFERSON COUNTY, KING
COUNTY, KITSAP COUNTY,
KLICKITAT COUNTY, LEWIS
COUNTY, LINCOLN COUNTY,
PACIFIC COUNTY, SKAGIT COUNTY,
SKAMANIA COUNTY, SNOHOMISH
COUNTY, SPOKANE COUNTY,
THURSTON COUNTY, WHATCOM
COUNTY, YAKIMA COUNTY, AND
WASHINGTON STATE ASSOCIATION
OF COUNTIES,

                              Plaintiffs,

        v.

WASHINGTON STATE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES,
and JILMA MENESES, in her official
capacity as SECRETARY OF
WASHINGTON STATE DEPARTMENT
OF SOCIAL AND HEALTH SERVICES

                              Defendants.

No. 3:23-cv-05775-MJP

REPLY IN SUPPORT OF
EMERGENCY MOTION TO
REMAND AND, IN THE
ALTERNATIVE, FOR
TEMPORARY RESTRAINING
ORDER

NOTE ON MOTION CALENDAR:
SEPTEMBER 22, 2023

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

**TABLE OF CONTENTS**

2   I.  INTRODUCTION ............................................................................................1

3   II. ARGUMENT AND AUTHORITY .................................................................1

4       A.  The Court Should Remand This Case for Lack of Subject Matter
            Jurisdiction...........................................................................................1

5           1.  This Court Lacks Subject Matter Jurisdiction ...........................1

6           2.  The Court Should Award Attorney's Fees.................................5

7       B.  In the Alternative, the Court Should Issue a Temporary Restraining Order ......6

8           1.  The Court Should Enjoin DSHS from Refusing to Evaluate
9               Patients.........................................................................................6

10              a.  The Counties Are Likely to Succeed on the Merits...................6

11                  i.   RCW 71.05.026 does not preclude relief.......................6

12                  ii.  Lack of capacity does not preclude relief. .....................8

13                  iii. The Trueblood Order does not preclude relief...............9

14              b.  The Counties Will Suffer Irreparable Harm if a TRO is Not
15                  Issued ........................................................................................9

16              c.  The Balance of Equities and Public Interest Favor a TRO.......11

17          2.  The Court Should Enjoin DSHS From Violating Its Notice
                Obligations ...............................................................................13

18  III. CONCLUSION................................................................................................14

19

20

21

22

23

24

25

26

27

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

# TABLE OF AUTHORITIES

2

3

## Federal Cases

4

*Abada v. Charles Schwab & Co.*,
  300 F.3d 1112 (9th Cir. 2002) ................................................................ 3

5

6

*Beltran v. Myers*,
  677 F.2d 1317 (9th Cir. 1982) .............................................................. 10

7

*California v. Picayune Rancheria of Chukchansi Indians of California*,
  725 F. App'x 591 (9th Cir. 2018) .......................................................... 10

8

9

*Cnty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) .................................................. 10

10

11

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
  463 U.S. 1 (1983) ............................................................................ 3, 4, 5, 8

12

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) .............................................................................. 2, 3

13

14

*Grancare, LLC v. Thrower by & through Mills*,
  889 F.3d 543 (9th Cir. 2018) .................................................................. 5

15

16

*Hornish v. King County*,
  899 F.3d 680 (9th Cir. 2018) .................................................................. 3

17

*Innovation L. Lab v. McAleenan*,
  924 F.3d 503 (9th Cir. 2019) ................................................................ 10

18

19

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................................ 10

20

21

*Negrete v. City of Oakland*,
  46 F.4th 811 (9th Cir. 2022) ................................................................... 2

22

*Polo v. Innoventions Int'l, LLC*,
  833 F.3d 1193 (9th Cir. 2016) .............................................................. 10

23

24

*Rissetto v. Plumbers and Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) .................................................................... 8

25

26

*Trueblood v. Washington State Dep't of Soc. & Health Servs.*,
  No. C14-1178 MJP, 2023 WL 4407539 (W.D. Wash. July 7, 2023) ........................ 4, 7, 12, 13

27

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*United States v. Holcomb,*
  639 F. Supp. 3d 1142 (W.D. Wash. 2022)................................................................. 3

*Women's Med. Pro. Corp. v. Voinovich,*
  911 F. Supp. 1051 (S.D. Ohio 1995) ........................................................................ 9

**State Cases**

*City of Seattle v. State,*
  103 Wash. 2d 663 (1985) ........................................................................................... 9

*Kanekoa v. Washington State Dep't of Soc. & Health Servs.,*
  95 Wash. 2d 445. (1981).................................................................................. 7, 8, 11

*Pierce Cnty. Off. of Involuntary Commitment v. W. State Hosp.,*
  97 Wash. 2d 264 (1982).................................................................................. 8, 9, 13

*Vovos v. Grant,*
  87 Wash. 2d 697 (1976)............................................................................................. 9

**Federal Statutes**

28 U.S.C. § 1331 .............................................................................................................. 2

28 U.S.C. § 1447 .............................................................................................................. 5

**State Statutes**

RCW 10.77.086 ..................................................................................................... 4, 5, 6, 7

RCW 71.05.026 ......................................................................................................... 6, 7, 8

RCW 71.05.280 ............................................................................................................... 10

RCW 71.05.290 ................................................................................................................. 5

RCW 71.05.320 ............................................................................................................... 11

RCW 71.05.425 ......................................................................................................... 13, 14

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - iii
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## I.      INTRODUCTION

After removing this case without legal basis, DSHS now blames its abdication of state law on this Court. But the Court has *not* authorized DSHS to break the law, nor should it: DSHS's past constitutional violations do not excuse its ongoing violations of state statutes and court orders.

DSHS's violations have a real human cost. Since filing the Emergency Motion for Remand (Dkt.7; the "Motion"), the Counties have already learned of one death attributable to DSHS's failure to comply with its obligations. It will not be the last. And DSHS's stunning indifference to the health of individuals in its care and the public has recently caused dedicated employees at the state hospitals DSHS oversees to resign.

Under controlling Ninth Circuit precedent, DSHS's sole basis for removal—a purported conflict between this Court's *Trueblood* Order and the Counties' requested relief—cannot support federal jurisdiction. Moreover, the *Trueblood* Order makes clear that no conflict exists: nothing in that Order prevents DSHS from fulfilling its notice obligations or evaluating civil conversion patients.

The Court should remand this case to Pierce County Superior Court so that DSHS can be held accountable for its contempt of statute and state court orders, in the same manner that this Court has held DSHS accountable for its disregard of the Constitution.

## II.      ARGUMENT AND AUTHORITY

### A.      The Court Should Remand This Case for Lack of Subject Matter Jurisdiction

#### 1.   This Court Lacks Subject Matter Jurisdiction

Both longstanding black letter law and recent Ninth Circuit authority confirm this court lacks subject matter jurisdiction because the Counties' claims do not raise any "stated federal

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 1
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

issue," let alone one that is "substantial." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). This lawsuit concerns DSHS' compliance with two state statutes, and the Counties invoke no rights that arise under or require interpretation of any provision of "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

DSHS asserts that the Counties "have necessarily raised a federal question as [the requested] injunction could directly conflict with the State's legal obligation under this Courts order" in *Trueblood*. Dkt. 12 ("Opp'n") at 8. But the Ninth Circuit has rejected precisely this argument, finding that the "conten[tion] that the relied-upon provisions of state law conflict with, and have been displaced by, [a federal court order]" does not establish federal jurisdiction. *Negrete v. City of Oakland*, 46 F.4th 811, 819 (9th Cir. 2022), *cert. denied sub nom*. 143 S. Ct. 781, 215 L. Ed. 2d 50 (2023). As DSHS concedes, that's true even where a state claim "would inevitably" require considering an alleged conflict with a federal order, Opp'n (quoting *Negrete*, 46 F.4th at 819), because "[e]ven assuming that th[is] inquir[y] implicate[s] questions of federal law, a federal issue raised in anticipation of a defense is not sufficient to establish federal question jurisdiction," *Negrete*, 46 F.4th at 819; *see also* Motion at 8–9 (collecting cases).

DSHS next contends that *Negrete* should not apply because the Counties are "political subdivisions of the State," "have been aware of the *Trueblood* litigation throughout its almost ten-year life and could have sought intervention," and some "appeared as amicus in the *Trueblood* June 2023 evidentiary hearing." Opp'n at 11. But that's irrelevant. The Order can only establish jurisdiction if the Counties are "parties, or in privity with parties, to the [*Trueblood*] action," and are "seek[ing] to challenge, enforce, or otherwise modify the terms of the . . . federal court orders in [*Trueblood*]," *Negrete*, 46 F.4th at 818, and DSHS can show neither. DSHS does not allege the Counties are in privity with any party to the *Trueblood*

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 2
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1    Order—they are not—and nothing in the Counties' claims seek to "challenge, enforce, or

2    otherwise modify the terms of" that Order.

3        DSHS also suggests *Negrete* should be set aside because the Counties anticipated

4    DSHS's defense in their complaint. Opp'n at 11-12 ("By raising the *Trueblood* order in their

5    Complaint . . . the Counties have embedded a substantial federal question into state law

6    claims[.]"). Wrong again: "a case may not be removed to federal court on the basis of a federal

7    defense . . . *even if the defense is anticipated in the plaintiff's complaint*, and even if both parties

8    concede that the federal defense is the only question truly at issue." *Abada v. Charles Schwab &*

9    *Co.*, 300 F.3d 1112, 1118 (9th Cir. 2002) (quoting *Franchise Tax Bd. v. Constr. Laborers*

10   *Vacation Trust*, 463 U.S. 1, 12 (1983)) (emphasis added).

11       Finally, in a passing footnote DSHS suggests that *Negrete* was "wrongly decided." Opp'n

12   at 12 n.2. But "[a]s a published opinion of the Ninth Circuit, [*Negrete*] is binding on this Court,"

13   *United States v. Holcomb*, 639 F. Supp. 3d 1142, 1147 (W.D. Wash. 2022).

14       The two cases DSHS claims are analogous confirm the Court lacks jurisdiction. In

15   *Grable*, the plaintiff claimed superior title in property based solely on a provision of federal tax

16   law. 545 U.S. at 314–15. The plaintiff raised the federal question, not the defendant. And in

17   *Hornish v. King County*, the plaintiff sought declaratory relief regarding rights under the

18   "National Trails System Act Amendments of 1983." 899 F.3d 680, 689–90 (9th Cir. 2018).

19   DSHS's suggestion that the *Hornish* plaintiff's claims were "based solely on a state statute,"

20   Opp'n at 12, is misleading: that statute was the Uniform Declaratory Judgments Act, and the

21   declaration sought concerned a question of federal law. *Hornish*, 899 F.3d at 689. The Counties

22   have raised no such federal question that could establish jurisdiction here.

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 3
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Finally—though it is irrelevant to the question of jurisdiction—the Counties' claims do not conflict with the *Trueblood* Order. This Court issued that Order in response to DSHS's decision to "prioritize[] Civil Conversion patients over Class Members at state hospitals" by giving them access to "forensic beds that should be open to and used by Class Members." *Trueblood v. Washington State Dep't of Soc. & Health Servs.*, No. C14-1178 MJP, 2023 WL 4407539, at *2 (W.D. Wash. July 7, 2023). As a result, the Court ordered DSHS to "cease admitting Civil Conversion patients to the state hospitals for ordered civil commitment treatment." *Id.* at *20. But the Order did not hold that DSHS was absolved of providing *any* services to civil conversion patients.

To the contrary, as the Class expressly assured this Court, the Order "follows state law by continuing to require admission of civil conversion patients to the state hospitals for purposes of their evaluation for possible civil commitment." Dkt. 3-1 at 114 (Vitalich Decl., Ex. 8 at 2). The Court also recognized this distinction, noting that "folks coming into the hospital only have to stay, statutorily, for their evaluation, and not for any treatment process." *Id*. at 125–26 (Vitalich Decl., Ex. 9 at 16:25–17:1).

DSHS's remarkable contention that "there is no practical difference between 'short-term evaluation admissions' and 'long-term treatment admissions,'" Opp'n at 7, ignores both this clear record, and the obvious practical difference between the two.

And DSHS's argument that it sometimes performs functions that could be classified as "treatment" during the evaluation process, Opp'n at 19, is no more persuasive. RCW 10.77.086(7) expressly requires that DSHS admit patients "for up to 120 hours . . . for *evaluation*," and as discussed above, the record shows the Court understood the distinction between this type of evaluation and the longer intensive "treatment" periods contemplated by the

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 4
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Involuntary Treatment Act. *See, e.g.*, RCW 71.05.290 (providing for "14-day intensive treatment period," "180-day treatment," and "90-day treatment"). DSHS's suggestion that its refusal to conduct these statutorily required evaluations is somehow supported by the statute's "legislative intent," Opp'n at 19, does not withstand the slightest scrutiny.

Finally, even if DSHS could establish that the *Trueblood* Order precluded civil conversion evaluations in state hospitals, DSHS could still perform these evaluations at any "facility operated or contracted by the department," RCW 10.77.086(7)—a fact this Court specifically recognized. *See* Declaration of Andrea Vitalich ("Vitalich Decl."), Ex. A at 17:20–23 ("[I]f I say that those people only stay [in the state hospital] as long as they are subject to evaluation, then the state can put them anyplace they want, it doesn't have to be at the state hospital?"); *see also id*. at 20:19–22. As discussed below, DSHS's failure to exercise this authority does not excuse its obligations. *See* § II.B.1.a.i–ii *infra*.

Neither DSHS's defenses, nor its invented conflict with this Court's *Trueblood* Order can establish federal jurisdiction. The Court should remand this case.

### 2. The Court Should Award Attorney's Fees

DSHS's Response confirms that "its decision to remove was objectively unreasonable" such that attorney's fees are appropriate. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 552 (9th Cir. 2018); Motion at 10. DSHS's procedural gambit was not merely inconvenient but dangerous—as evidenced by the recent death of a patient that DSHS discharged without the statutorily required notice. *See* § II.B.2 *infra*. The Court should award attorneys' fees under 28 U.S.C. § 1447(c).

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 5
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**B.      In the Alternative, the Court Should Issue a Temporary Restraining Order**

Because the Court lacks jurisdiction, it should remand this case without addressing the Counties' request for injunctive relief. But if the Court disagrees, it should enjoin DSHS from committing further violations.

**1.   The Court Should Enjoin DSHS from Refusing to Evaluate Patients**

*a.   The Counties Are Likely to Succeed on the Merits*

DSHS does not dispute either that RCW 10.77.086 requires it to admit civil conversion patients for evaluation, or that it has disregarded this obligation. Instead, based on a misapplication of the law, and a misconstruction of this Court's *Trueblood* Order, DSHS claims to be immune from this requirement. But contrary to DSHS's assertions: (i) no statute deprives the Counties of standing; (ii) DSHS's failure fulfill its statutory obligations does not excuse them; and (iii) the *Trueblood* order does not conflict with the Counties' requested relief.

*i.   RCW 71.05.026 does not preclude relief.*

RCW 71.05.026(2) limits injunctive relief "for actions or inactions performed pursuant to the administration of [Ch. 71.05 RCW] with regard to . . . : (a) the allocation or payment of federal or state funds; (b) the use or allocation of state hospital beds; or (c) financial responsibility for the provision of inpatient behavioral health disorder treatment and care."  RCW 71.05.026(2). That statute has no application here for four reasons.

First, the Counties challenge DSHS's refusal to take custody of civil conversion patients pursuant to RCW 10.77.086(7)—which is not part of Ch. 71.05 RCW. Motion at 13. DSHS cites no authority for its suggestion that downstream obligations under Chapter 71.05 expand the plain meaning of this statute.

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Second, the Counties are not seeking any prohibited category of relief. Motion at 13–14. DSHS contends that because "state hospital beds are a finite resource . . . an order compelling DSHS to admit patients would directly dictate how DSHS allocates state hospital beds." Opp'n at 16. But the law "no longer requires Civil Conversion patients to be sent to [state hospitals] for an initial evaluation. Instead, they may be sent to 'a facility operated or contracted by' DSHS." *Trueblood*, 2023 WL 4407539, at *4 (citation omitted); *see also* RCW 10.77.086(7). DSHS's only response is that it has not bothered to contract with any such facilities. Opp'n at 17 ("This argument also fails because there are no facilities contracted by DSHS for this purpose."). But, as this Court has recognized, DSHS's "fail[ure] to take reasonable steps" to comply with its obligations is a reason to enforce, not excuse them. *Trueblood*, 2023 WL 4407539, at *11; *see also Kanekoa v. Washington State Dep't of Soc. & Health Servs.*, 95 Wash. 2d 445, 449–50. (1981) (State's "heavy responsibility and lack[ of] facilities" did not excuse obligation to admit patients).

Third, as DSHS acknowledges, Opp'n at 17, RCW 71.05.026 does not apply to the Counties' separate request for a writ of mandamus. DSHS asserts that mandamus is inappropriate because "a host of discretionary functions related to the ongoing management of a behavioral health system" preclude defining "the precise act to be done" with sufficient particularity. Opp'n at 17. But the Counties request that DSHS "accept civil conversion patients for civil commitment evaluations" under RCW 10.77.086(7), Dkt. 1-2 at 16—an obligation that is "[p]resumptively . . . imperative and operates to create a duty rather than to confer discretion." *Kanekoa*, 95 Wash. 2d at 448. DSHS previously conceded to this Court that it is "Mandated by Law and Court Order

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 7
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to Accept These Patients." Dkt. 3-1 at 44 (Vitalich Decl., Ex. 1). "The precise act[s] to be done," Opp'n at 17, therefore, involve no discretion that would preclude a writ of mandamus.[1]

Finally, DSHS ignores that its statutory obligations have been reduced to a court order in every conversion case, and RCW 71.05.026(2) does not prevent the enforcement of court orders; nor could it without violating Washington's separation of powers doctrine. Motion at 14. The Court should, therefore, reject DSHS's untenable position that it can violate its statutory obligations with impunity.

> ## ii.    *Lack of capacity does not preclude relief.*

DSHS repeatedly contends that the requested relief is impossible because "hospital beds are a finite resource." *See*, e.g.*, Opp'n at 16; *id.* at 1, 5, 17. But DSHS ignores the clear authority holding that neither a lack of resources nor practical difficulty will excuse DSHS's statutory obligations. Motion at 15 (citing *Pierce Cnty. Off. of Involuntary Commitment v. W. State Hosp.*, 97 Wash. 2d 264, 272 (1982); *Kanekoa*, 95 Wash. 2d at 449–50).

The Counties recently learned that DSHS could have capacity to serve as many as 300 additional patients if it allocated sufficient funding. Declaration of Al French ¶¶ 2–3. And as DSHS's submissions confirm, DSHS is capable of creating additional capacity when forced to do so. Dkt. 13 (Bovenkamp Decl.) ¶ 4 (discussing DSHS's efforts to increase capacity). DSHS's reference to the Washington Healthcare Authority's ("HCA") ability to "contract[] for 174 traditional ITA beds in the community along with 77 additional beds that cater to civil

---

[1] In a footnote, DSHS also suggests the Counties have an alternative "plain, speedy, and adequate remedy" by seeking enforcement of the superior court orders (that DSHS has persistently ignored) requiring DSHS to accept civil conversion patients for evaluation. Opp'n at 22 n.4. But in those proceedings, the State has argued the Counties are precluded from seeking any such relief because "[t]here is no legal support for adjudication of a dispute between two non-parties in the context of a criminal proceeding." *See* Vitalich Decl., Ex. B at 1. The Department, therefore, cannot take the contrary position here. *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 8
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

conversion patients," Opp'n at 22, only begs the question of why DSHS has been unable or unwilling to do the same.

### iii.   *The Trueblood Order does not preclude relief*.

As explained above, the Counties' claims do not conflict with the *Trueblood* Order, and that Order does not preclude an injunction here. *See* II.A.1 *supra*.

### b.   *The Counties Will Suffer Irreparable Harm if a TRO is Not Issued*

The Counties will suffer irreparable harm unless DSHS's statutory dereliction is enjoined, and DSHS's arguments to the contrary are meritless.

***The Counties can seek redress for their constituents' injuries***. DSHS does not dispute that its conduct will irreparably harm the civil conversion patients it refuses to evaluate. In fact, DSHS concedes that releasing these individuals without treatment "would be unethical," "would place the patient at enormous risk of harm," Dkt. 15 (Petzinger Declaration ¶¶ 8, 10), and would prevent their "safe[] discharge[] to the community." Dkt. 13 (Bovenkamp Decl. ¶ 7). And contrary to DSHS's assertion, courts have regularly held that government entities have standing to challenge injuries suffered by their constituents. *See City of Seattle v. State*, 103 Wash. 2d 663, 669 (1985) (local governments have "standing to raise the equal protection claims of its potential residents"); *Vovos v. Grant*, 87 Wash. 2d 697, 700–01 (1976) (county public defender had standing to challenge order "in his representative capacity of legal counsel for indigent and certain other juveniles [defendants]"); *Pierce Cnty.*, 97 Wash. 2d at 265 ("[T]he counties' duty to provide for the welfare of their citizens" establishes standing); *see also Women's Med. Pro. Corp. v. Voinovich*, 911 F. Supp. 1051 (S.D. Ohio 1995), *aff'd*, 130 F.3d 187 (6th Cir. 1997) (doctor had standing to challenge harm suffered by patients). And to the extent DSHS contends

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 9
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

that the Counties lack Article III standing, this would only warrant remand. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

**The requested relief is not overly speculative**. DSHS baldly asserts that the Counties' alleged injuries are too "speculative" to warrant an injunction. But courts have repeatedly found that the identified harm—the denial of medical care, harm to public safety, and the interference with the administration of government functions, Motion at 17–19—is sufficient. *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("ongoing and concrete harm to Maryland's law enforcement and public safety interests" constituted irreparable harm sufficient stay judgment); *Innovation L. Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019) (removal of tool necessary to perform government function constituted "irreparable harm" for purposes of stay); *California v. Picayune Rancheria of Chukchansi Indians of California*, 725 F. App'x 591, 592 (9th Cir. 2018) ("danger . . . posed to public safety" constituted irreparable harm); *Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982) (denial of needed medical care warranted injunctive relief); *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017) ("interfere[ence with] Counties' ability to budget, plan for the future, and properly serve their residents" warranted injunctive relief).

**The requested relief is not ineffective.** DSHS also contends that the requested relief would not address the harm caused by DSHS's dereliction but would merely "pause the alleged injury for 120 hours for each civil conversion patient admitted for evaluation only." Opp'n at 21. This ignores the fact that the assessments would provide critical information to the Counties and community members about whether patients need care or "present[] a substantial likelihood of" reoffending. RCW 71.05.280(3). In addition, DSHS itself contends that this initial evaluation may trigger an obligation to provide additional treatment, which *would* address the harm. Opp'n

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

at 19. In such cases, DSHS can treat these individuals at certified facilities outside the state hospitals without conflicting with or undermining the *Trueblood* Order. RCW 71.05.320.

**DSHS's effort to shift its burden to the Counties does not obviate this harm.** DSHS argues the Counties can mitigate the resulting harm through "other processes available to them under the Involuntary Treatment Act," such as "refer[ring] their cases to their DCR or petition for involuntary treatment[.]" Opp'n at 22. But DSHS ignores that the Counties lack the resources required to do so, Dkt. 3-1 at 157–58 (Declaration of Michael Reading ("Reading Decl.") ¶¶ 2, 4–5); id. at 153 (Declaration of Anne Mizuta ("Mizuta Decl.") ¶¶ 8–9), use fundamentally different criteria for evaluating civil commitments than those available to DSHS. *id.* at 152 (Mizuta Decl., ¶ 7); *id*. at 157 (Reading Decl. ¶ 3), and rely on facilities that can refuse admission to civil conversion patients, *id*. at 158 (Reading Decl. ¶ 6). And DSHS cites no authority for the proposition that the Counties should be denied injunctive relief because they could theoretically mitigate some harm through extraordinary expense and public cost. To the contrary, Washington law is clear that the state's "heavy responsibility and lack[ of] facilities" does not allow it to "pass some of its responsibilities on to local authorities." *Kanekoa*, 95 Wash. 2d at 449–50.

### c.  The Balance of Equities and Public Interest Favor a TRO

DSHS concedes its statutory obligation to evaluate civil conversion patients for civil commitment." Dkt. 3-1 at 44, 147 (Vitalich Decl., Ex. 1, 13). It concedes that this work is important, and "effective in reducing recidivism." *Compare* Dkt. 1-2 ¶ 43 *with* Dkt. 11 ¶ 43. And it concedes the dire consequences to the patients and their communities of its failure to fulfill its obligations:  approximately 80% of civil conversion evaluations lead to commitment, Opp'n at 20; without commitment, these patients cannot be "safely discharged to the community," Dkt. 13

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 11
3:23-cv-05775-MJP

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(Bovenkamp Decl. ¶ 7); and it is "unethical" to release these patients without treatment because it "put[s] the patient at serious risk of harm" and because the patients' "psychiatric symptoms can lead to serious long-term consequences," Dkt. 15 (Petzinger Declaration ¶¶ 8, 10).

It is no less "unethical" for DSHS to release these patients without an evaluation than to discharge them after evaluation but prior to treatment. And DSHS's assertion that it must be permitted to abdicate its responsibility to these patients in order to comply with its obligations under the *Trueblood* Order misses the point:  it can and should be required to do both.

As DSHS concedes, the *Trueblood* Class members and civil conversion patients are largely *the same population* at different stages. Dkt. 14 (Waterland Decl. ¶ 6) ("[T]he vast majority of these [civil conversion patients] are Trueblood class members prior to dismissal of criminal charges and referral for civil commitment."). DSHS, therefore, has already violated many of these individuals' constitutional rights. Motion at 19–20. And, as this Court has recognized, many of these individuals "lack Medicaid benefits" and so "cannot obtain necessary access to mental and physical health care for their serious mental health and medical conditions." *Trueblood*, 2023 WL 4407539, at *6. As a result, they "cycle through the State's criminal justice and competency system" reoffending before being rearrested. *Id*. at *5. DSHS's suggestion that its prior failure to care for these people justifies its decision to turn them out without even an evaluation is untenable.

To be clear, the Counties are not challenging the Court's Order that DSHS prioritize the provision of restoration services to Class members or limit the use of state hospital beds for treatment. But that Order does not authorize DSHS to utterly disregard its admitted statutory obligations to conversion patients, and DSHS's decision to use the Order as an excuse to do so is contrary to the public interest.

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 12
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**2.   The Court Should Enjoin DSHS From Violating Its Notice Obligations**

The Court should also enjoin DSHS from violating its notice obligations under RCW 71.05.425:  to inform the Counties and other designated individuals at least 30 days before a committed patient will be released. This notice requirement is essential to ensuring the communities are prepared to accept these patients so that they can be safely discharged. Motion at 21; Declaration of Laetitia Geoffroy-Dallery ("Geoffroy-Dallery Decl.") ¶¶ 6–7. DSHS's abdication of its responsibilities has caused dedicated state hospital employees to begin to resign. *Id.* ¶¶ 2, 8, Ex. B.

DSHS, again, does not dispute its obligations. And its bald assertion that the Counties "do not establish how [DSHS's] notice is insufficient" and otherwise fail to establish the requirements of injunctive relief are incorrect. *See* Motion at 20–21.

To the contrary, the irreparable harm the Counties anticipated has already occurred. On August 3, 2023 DSHS provided notice directed only to "Prosecutor, Washington Association of Sheriffs and Police Chiefs (WASPC), and county law enforcement agencies" that it intended to release five civilly committed patients "by September 7, 2023," one of whom was Jesse Alan Thompson. Declaration of Daniela Raaymakers, Ex. A. On September 1, 2023, Pierce County contacted DSHS to let them know that "the State will be refiling criminal charges in [Mr. Thompson's] matter today," and "will be requesting a bench warrant issue and order to transfer him to Pierce County Jail., *Id.*, Ex. B. On September 14, 2023, Pierce County received notice that "Mr. Thompson was discharged on 8/15"—only 12 days after DSHS provided notice and in violation of RCW 71.05.425's 30-day requirement—"and subsequently passed away." *Id.*, Ex. C. This tragic death could have been avoided if DSHS had fulfilled its statutory notice obligations.

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Counties have also learned the DSHS intends—over the objections of its own forensic evaluators—to release an individual "with a long history of sexually violent and violent offending . . . and who has within the past month and a half assaulted a peer, engaged in property destruction and self-harm leading to 5-point restraint, and sexual harassment of a staff member whom he compared to the alleged victim of his current offense." Geoffroy-Dallery Decl., Ex. B. If DSHS decides to go through with this planned release, it must at least be required to comply with its statutory notice obligations so that the receiving county and community can take steps to prepare and mitigate the resulting risks.

DSHS' violations and the resulting harm are indisputable. The public interest and equities require DSHS to fulfill its notice obligations to ensure the safety of the discharged patients, and the communities they return to. The Court should enjoin DSHS from continuing to violate RCW 71.05.425.

### III.      CONCLUSION

The Court should promptly remand this case to Pierce County Superior Court. Alternatively, the court should enjoin DSHS from continuing to violate its statutory obligations.

DATED this 22nd day of September, 2023.

I certify that this motion contains 4,195 words, in compliance with the Local Civil Rules.

PACIFICA LAW GROUP LLP

*s/ Paul J. Lawrence*
Paul J. Lawrence, WSBA #13557
Ian D. Rogers, WSBA #46584
Shweta Jayawardhan, WSBA #58490
1191 2nd Avenue, Ste 2000
Seattle, WA 98101

*Attorneys for Plaintiff Washington*
*State Association of Counties*

REPLY ISO EMERGENCY MOTION FOR REMAND OR
TEMPORARY RESTRAINING ORDER - 14
3:23-cv-05775-MJP

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750