UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PIERCE COUNTY, et al., | CASE NO. C23-5775 MJP |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION TO REMAND |
| v. | |
| WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' "Emergency Motion to Remand and, in the Alternative, for Temporary Restraining Order." (Dkt. No. 7.) Having reviewed the Motion, Defendants' Response (Dkt. No. 12), the Reply (Dkt. No. 21), and all supporting materials, and having held oral argument on September 26, 2023, the Court GRANTS the Motion and REMANDS this action to Pierce County Superior Court.

# BACKGROUND

Plaintiffs, twenty-two Washington State counties and the Washington State Association of Counties, filed suit in Pierce County Superior Court against the Washington State Department of Social and Health Services (DSHS) and Jilma Meneses in her official capacity as Secretary of DSHS. Plaintiffs allege that DSHS has violated state law by refusing to admit individuals for court-ordered civil commitment evaluations and by failing to provide written notice to law enforcement, prosecutors, victims, and others before releasing civil conversion patients. (See Complaint ¶¶ 6-8, (Dkt. No. 1-2).) Plaintiffs "seek declaratory and injunctive relief against DSHS or a writ of mandamus to: (1) declare DSHS' refusal to admit patients for statutorily required civil conversion evaluations a violation of RCW 10.77.086 and direct DSHS to admit patients for the required evaluations; and (2) declare DSHS's release of civilly committed conversion patients without proper notice a violation of RCW 71.05.425 and direct DSHS to comply with its statutory notice obligations before releasing any such patients." (Id. ¶ 9; see id. Prayer for Relief.)

With their Complaint, Plaintiffs simultaneously filed a motion for preliminary injunction or writ of mandamus, and scheduled a hearing on the motion for September 8, 2023 in Pierce County Superior Court. But on August 28, 2023, DSHS removed this action to this Court. (Notice of Removal (Dkt. No. 1).) In the notice of removal, Defendants assert:

> This is a civil action which may be removed to this Court by Defendant[s] pursuant to 28 U.S.C. § 1441 in that it is a civil action founded on a claim or right arising under federal law, resulting from the orders in Trueblood and the federal law on which those orders are based. The district court has supplemental jurisdiction over any state claim pursuant to 28 U.S.C. §1367.

(Dkt. No. 1 at 3.) On August 31, 2023, Plaintiffs filed the instant "Emergency Motion for Remand." (Dkt. No. 7.) Plaintiffs argue that because this Court lacks subject matter jurisdiction

1   over the claims, this action must be remanded to state court. Id. The Court construed the
2   "Emergency Motion for Remand" as a motion to remand and ordered briefing consistent with the
3   Local Civil Rules. (Minute Order (Dkt. No. 9).)
4       The Court reviews: (1) the state statutes at issue in Plaintiffs' action concerning civil
5   commitment; (2) the relationship between Plaintiffs' claims and an ongoing civil action pending
6   before this Court: A.B. by & through Trueblood v. Washington State Dep't of Soc. & Health
7   Servs., No. C14-1178 MJP (W.D. Wash.) ("Trueblood"); and (3) the factual allegations
8   impacting the Court's subject matter jurisdiction.
9   **A.   DSHS's Statutory Obligations Regarding Civil Commitment**
10      Under Washington law, "[w]hen a court declares that an individual is incompetent to
11  stand trial for felony charges," certain obligations with regard to that individual are imposed on
12  DSHS. In re M.W., 185 Wn.2d 633, 642 (2016). If a pretrial detainee does not regain
13  competency to stand trial within a certain period of time, the court "shall dismiss the charges
14  without prejudice and order the defendant to be committed to the department [DSHS] for
15  placement in a facility operated or contracted by the department for up to 120 hours . . . for
16  evaluation for the purpose of filing a civil commitment petition." RCW 10.77.086(7)(a). No
17  longer facing criminal charges, the individual's status is "converted" from a criminal hold to a
18  civil commitment hold. Such individuals are referred to as "civil conversion patients." Based on
19  its evaluation of the civil conversion patient, DSHS "may directly file a petition for 180-day
20  treatment" if the patient "has committed acts constituting a felony, and as a result of a behavioral
21  health disorder, presents a substantial likelihood of repeating similar acts." RCW 71.05.280(3),
22  290(3). The commitment can be renewed for subsequent 180-day terms, or the patient can be
23  conditionally released to a less restrictive setting. RCW 71.05.320(4).
24

1    For civil conversion patients who were charged with a "sex, violent, or felony harassment
2    offense," DSHS must provide written notice of their transfer or release to: (1) the chief of police
3    of the city, if any, in which the person will reside; (2) the sheriff of the county in which the
4    person will reside; and (3) the prosecuting attorney of the county in which the criminal charges
5    against the committed person were dismissed prior to their release or transfer "at the earliest
6    possible date, and in no event later than thirty days before [the release, leave or transfer]." RCW
7    71.05.425(1)(a). Additionally, if "notice has been requested in writing about a specific person,"
8    DSHS is also obligated to provide the notice to: (1) the victim of the sex, violent, or felony
9    harassment offense that was dismissed, or the victim's next of kin; (2) any witnesses who
10   testified against the person in any court proceedings; (3) any person specified in writing by the
11   prosecuting attorney; and (4) the chief of police of the city, if any, and the sheriff of the county,
12   if any, which had jurisdiction of the person on the date of the applicable offense. RCW
13   71.05.425(1)(b).

**B.    Trueblood Litigation**

15    DSHS is also the defendant in Trueblood, an ongoing class action concerning the rights
16   of individuals charged with a crime in the state court system who have been ordered to receive
17   competency evaluation and/or restoration services from DSHS in advance of trial. In April 2015,
18   the Court found DSHS was "violating the constitutional rights of pretrial criminal detainees . . .
19   by failing to provide them timely court-ordered competency evaluations and restoration
20   services." Trueblood, C14-1178 MJP, Findings of Fact and Conclusions of Law on Plaintiffs'
21   Motion for Material Breach of Contempt Settlement Agreement, Dkt. No. 1009 at 2, 2023 WL
22   4407539, at *1 (W.D. Wash. July 7, 2023) ("Contempt Order"). In Trueblood, DSHS faces an

ongoing permanent injunction requiring it to provide the class members with "competency evaluation and restoration within strict time limits." Id.

The Trueblood Class does not include civil conversion patients—the individuals at issue in the present litigation commenced by Plaintiffs. Civil conversion patients are those individuals who have been found incompetent to stand trial, had their criminal charges dismissed, and ordered to receive a civil commitment evaluation by DSHS. As the Court in Trueblood noted, "[w]hile a Class Member may become a Civil Conversion patient by dint of a court order dismissing the felony charges and ordering civil commitment, a Civil Conversion patient lacks the same rights as a Class Member." Trueblood, C14-1178 MJP, Contempt Order at 9.

Civil conversion patients have recently become entangled in DSHS's longstanding failure to provide timely competency services to the Trueblood Class. In December 2022, the Trueblood class filed a motion to hold DSHS in civil contempt for a third time, alleging that DSHS failed to comply with the terms of the permanent injunction and settlement agreement by placing civil conversion patients into the forensic beds at the state hospitals that should have been occupied by class members to receive timely competency services. See Trueblood, C14-1178 MJP, Plaintiffs' Motion for Contempt and Material Breach, Dkt. No. 938. Among other relief, the class requested an injunction requiring DSHS to "immediately cease admitting civil conversion patients to the state hospitals for civil commitment treatment[.]" Trueblood, C14-1178 MJP, Contempt Order at 49. In July 2023, the Trueblood court granted the Class's motion for civil contempt and ordered DSHS, in part, to "immediately cease admitting Civil Conversion patients to the state hospitals for ordered civil commitment treatment, except for patients for whom the commitment court has made a special finding of violent felony pursuant to RCW § 71.05.280(3)(b) (which the Parties

1  refer to as 'HB1114 patients')." Id. The Court then modified this portion of the Contempt Order

2  as follows:

> Defendants shall immediately cease admitting Civil Conversion patients to the state hospitals for ordered civil commitment treatment, except for patients who have been charged with a "violent offense" under RCW 9.94A.030(58). Civil Conversion patients charged with a "violent offense" under RCW 9.94A.030(58) are referred to in this Order as "HB1114 patients." This admission restriction applies only to Civil Conversion patients, and not to HB1114 patients or any other patients seeking entry into the state hospitals.

Id., Order Modifying Order on Motion for Material Breach of Contempt Settlement Agreement, Dkt. No. 1033 at 2 ("Modification Order"). As Plaintiffs in the present case note, the Trueblood Contempt Order prevents admission of non-violent civil conversion patients into the state hospitals for treatment, but not evaluation. They similarly note that the Contempt Order does not alter DSHS ability to provide civil commitment evaluations at any other facilities operated or contracted by DSHS outside of Eastern State Hospital and Western State Hospital.

Additionally, the Contempt Order required DSHS to "discharge [within 60 days] all civil patients in forensic beds out of the state hospitals or transfer them into non-forensic beds." Trueblood, Modification Order at 2. DSHS was permitted to "transfer civil patients who have been admitted to the state hospitals into non-forensic beds without violating the bar on admitting new Civil Conversion patients[.]" Id. And the Court ordered the parties to work with the Court Monitor to commence an evaluation process of the State's Civil Conversion practices to identify improvements. Id., Contempt Order at 51.

C. **Plaintiffs' Allegations**

In the present lawsuit, Plaintiffs allege that DSHS is violating its statutory obligations by: (1) refusing to admit civil conversion patients to the state hospitals or any DSHS facilities (owned or contracted) for civil commitment evaluations, and (2) failing to comply with its

statutory notice obligations prior to releasing committed patients. (See Compl. ¶¶ 45-50, 54-56, 59-60.)

Defendants concede that they have refused to admit approximately 45 individuals sent for civil conversion evaluations since July 7, 2023. (Declaration of Kevin Bovenkamp ¶ 9 (Dkt. No. 13).) DSHS maintains that it "has turned away an average of six non-violent felony conversion patients per week and urged the counties to utilize their local resources." (Id. ¶ 12.) But Defendants argue that DSHS cannot admit civil conversion patients to the state hospitals for evaluations without also providing them treatment, which would then violate the terms of the Contempt Order in Trueblood. (Resp. at 7.) Defendants support this argument with a declaration from the Chief Medical Officer at Gage Center for Forensic Services at Western State Hospital, who avers that in order to provide the civil commitment evaluations, DSHS "must treat the patient as well as evaluate them for civil commitment criteria." (Declaration of George Petzinger, M.D. at ¶ 8 (Dkt. No. 15).) And while DSHS recognizes it can provide evaluations outside of the state hospitals, it asserts that "there are no alternative facilities operated by the Department, or under contract with the Department, to evaluate and treat civil conversion patients." (Id. at ¶ 3.) DSHS relies on this information to support its arguments that any resolution of Plaintiffs' claims in the present action will necessarily require the Pierce County Superior Court to determine the scope of the Contempt Order in Trueblood and whether its limitation on civil conversion admissions to the state hospitals "has supremacy over the state law procedures under Wash. Rev. Code §§ 10.77, 71.05." (Def. Resp. at 8.) The Court reviews the merits of this argument below.

ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION TO REMAND - 7

**ANALYSIS**

**A.     Legal Standard**

Federal courts are courts of limited jurisdiction that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) (citations omitted). Removal to federal court is generally proper only when the district court has original jurisdiction. <u>See</u> 28 U.S.C. § 1441. Under 28 U.S.C. § 1331, federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

"[A] case can 'arise under' federal law in two ways." <u>Gunn v. Minton</u>, 568 U.S. 251, 257 (2013) (alteration omitted). First and "[m]ost directly, a case arises under federal law when federal law creates the cause of action asserted." <u>Id.</u> (citing <u>Am. Well Works Co. v. Layne & Bowler Co.</u>, 241 U.S. 257, 260 (1916)). This branch—suits raising federal causes of action— "accounts for the vast bulk of suits that arise under federal law." <u>Id.</u>

Second, "even where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a 'special and small category' of cases in which arising under jurisdiction still lies." <u>Gunn</u>, 568 U.S. at 258 (quoting <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 699 (2006)). This is often referred to as the "substantial federal question" branch of federal question jurisdiction. <u>Negrete v. City of Oakland</u>, 46 F.4th 811, 817 (9th Cir. 2022). Under this branch, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn</u>, 568 U.S. at 258. A federal issue is necessarily raised where it is an "essential element" of plaintiff's claim. <u>Negrete</u>, 46 F.4th at 819 (quoting <u>Grable & Sons Metal Prod., Inc. v. Darue Eng'g &</u>

1  Mfg., 545 U.S. 308, 314-15 (2005)). Jurisdiction is proper "[w]here all four of these
2  requirements are met" because in such a case, "there is a 'serious federal interest in claiming the
3  advantages thought to be inherent in a federal forum,' which can be vindicated without
4  disrupting Congress's intended division of labor between state and federal courts." Gunn, 568
5  U.S. at 258 (quoting Grable, 545 U.S. at 313-14).

6       "[T]he question whether a claim 'arises under' federal law must be determined by
7  reference to the 'well-pleaded complaint.'" Merrell Dow Pharms. Inc. v. Thompson, 478 U.S.
8  804, (1986) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 9-10
9  (1983)). It is "settled law that a case may not be removed to federal court on the basis of a
10 federal defense, including the defense of pre-emption, even if the defense is anticipated in the
11 plaintiff's complaint, and even if both parties concede that the federal defense is the only
12 question truly at issue." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (citing Franchise
13 Tax, 463 U.S. at 12). Indeed, the Ninth Circuit has recently held that "the notion that there is
14 federal jurisdiction simply because purely state law claims have collateral impact on a federal
15 decree conflicts with current Supreme Court caselaw." Negrete, 46 F.4th at 818 (citing Syngenta
16 Crop Prot., Inc. v. Henson, 537 U.S. 28, 31 (2002) (rejecting the view that the All Writs Act, or
17 notions of ancillary jurisdiction, allow removal of "a state-court case in order to prevent the
18 frustration of orders the federal court has previously issued"); Rivet v. Regions Bank of La., 522
19 U.S. 470, 477 (1998) (holding that, because federal claim preclusion is a defense, and not an
20 aspect of a plaintiff's cause of action, it is "not a proper basis for removal").

21      Defendants assert that Plaintiffs' state law claims between non-diverse parties arise under
22 federal law because they raise a substantial federal question. Specifically, Defendants contend
23 that Plaintiffs' lawsuit is "a civil action founded on a claim or right arising under federal law,
24

1 resulting from the orders in Trueblood and the federal law on which those orders are based."
2 (Notice of Removal at 3.) Defendants' removal therefore calls into question whether this action
3 fits within the "slim category" of substantial federal question cases. Gunn, 568 U.S. at 258.

**B.     The Court Lacks Subject Matter Jurisdiction**

The Court lacks subject matter jurisdiction over this action because Plaintiffs' state law claims do not pose a substantial federal question in satisfaction of all four Gunn factors.

First, the Court remains unconvinced that Plaintiffs' action raises federal issues. Defendants fail to show that Plaintiffs' present action will necessarily touch on the constitutional rights at issue in Trueblood. In the first instance, civil conversion patients—the individuals at issue in the present case—do not possess the same or superior constitutional rights as Trueblood class members. Defendants provide no clear argument that a decision concerning civil conversion patients will impact the rights of Trueblood class members. At most, DSHS has pointed to the recent impact that civil conversion patients have had on Trueblood class members' receipt of timely competency services at the state hospitals. This arose out of DSHS's decision to prioritize admission of civil conversion patients at the state hospitals over Trueblood class members, which then deprived class members of beds needed for competency services and violated their constitutional rights. The Court has sought to rectify this problem by, among other relief, barring admission of most civil conversion patients for treatment at the state hospitals. Plaintiffs' present action does not necessarily touch on class members' timely receipt of competency services because Plaintiffs seek only to compel admission of civil conversion patients for limited evaluations at the state hospitals or at outside DSHS facilities. Even if Plaintiffs succeed in compelling such evaluations at the state hospitals, there is no clear evidence that there would be any impact on Trueblood class members' constitutional rights. And if such

individuals are evaluated outside of the state hospitals, there is no evidence it would have any impact on the Trueblood class. So while Defendants' arguments raise a "potential federal issue" it is "not necessarily raised within the meaning of Grable because it is not an 'essential element' of [the plaintiffs'] claims." Negrete, 46 F.4th at 819 (emphasis added) (citing Grable, 545 U.S. at 314-15). Instead, "[a]t most, it is a federal issue that may arise as a potential defense." Id. Moreover, Plaintiffs' claims regarding the notification requirements under state law have no apparent overlap with Trueblood.

      Second, the Court does not find the federal rights are in actual dispute or that the state court must determine the scope of the Trueblood Contempt Order to resolve Plaintiffs' claims. As Defendants appear to concede, the Trueblood Contempt Order does not bar DSHS from accepting civil conversion patients into the state hospitals for evaluation. (Def. Resp. at 8.) But DSHS argues that it cannot accept such individuals for evaluation without also treating them, and that doing so would violate the Contempt Order in Trueblood. (Id.) This argument does not necessarily require an interpretation of the Trueblood Contempt Order. Rather, it requires resolving the disputed factual question of whether DSHS can provide the statutory evaluation at the state hospitals without also providing treatment. And based on its review of Dr. Petzinger's declaration, the Court is not particularly convinced that DSHS is correct in its assertion. Regardless, this factual dispute can be resolved without any interpretation of the Trueblood Contempt Order or potential conflict with the rights of Trueblood class members. As such, the Court does not agree with Defendants that the state court will inevitably have to determine the "supremacy" of state statutes or the federal rights at issue in Trueblood. Moreover, the state court may order DSHS to accept civil conversion patients at other DSHS facilities (outside of the hospitals) without creating any conflict with the Trueblood Contempt Order. The Court

recognizes that DSHS claims it lacks access to such facilities. But that does not necessarily mean the state court could not order them to create or obtain access to such facilities.

Third, the Court is not convinced that the federal issue Defendants cite is substantial. As the Supreme Court has cautioned, "[t]he substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260. Defendants argue that the federal issue here involves the "Court's oversight of the state's mental health system and the federal constitutional rights of numerous Washingtonians." (Def. Resp. at 9.) The Court agrees that the rights at issue in Trueblood are substantial and important. But as the Supreme Court noted in Gunn, there must be something "demonstrating that the question is significant to the federal system as a whole." Gunn, 568 U.S. at 264. Although the rights at issue in Trueblood are important, they are not necessarily significant to the federal system as a whole. As the Parties' briefing on the merits of Plaintiffs' claims show, the primary dispute here primarily turns on interpretations of state statutory law. Additionally, there is no apparent overlap between Trueblood and Plaintiffs' claims concerning the notice requirements. As such, only a portion of the underlying case might possibly present a federal issue. On the whole, the Court finds the absence of a substantial federal issue.

Lastly, Defendants fail to demonstrate how resolution of the present action would avoid disrupting the federal-state balance approved by Congress. Defendants' argument turns exclusively on their belief that only this Court can interpret the Trueblood Contempt Order and the "federal constitutional rights" at issue in that action. But, as explained above, Plaintiffs' claims do not necessarily involve or impact the constitutional rights at issue in Trueblood or the scope of the Contempt Order. Instead, as Defendants' arguments in response to Plaintiffs' temporary restraining order make clear, Plaintiffs' claims require resolving the scope and

requirements of Washington statutory law. Nowhere have Defendants identified why the state-law specific issues should be resolved by a federal court, rather than a state court where there is otherwise no federal subject matter jurisdiction.

Having considered the arguments and allegations, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' claims. The Court therefore GRANTS the Motion to Remand and REMANDS this action to Pierce County Superior Court.

C.  **Request for Attorney's Fees**

Plaintiffs' Motion also requests fees under 28 U.S.C. § 1447(c). (See Dkt. No. 7 at 16-17.) Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." Id.

Although Defendants failed to provide a written response to the request for fees, the Court DENIES the request for fees and costs. Defendants were admittedly attempting to remove this action into federal court through the "slim category" of cases that fit within the substantial federal question branch of federal jurisdiction. See Gunn, 586 U.S. at 258. While the Court has not been convinced by the arguments in support of jurisdiction, it finds that Defendants had a reasonable basis on which to attempt removal. As such, the Court DENIES the request for fees.

**CONCLUSION**

The Court today finds that it lacks subject matter jurisdiction over this action and that it must be remanded to Pierce County Superior Court for resolution of the underlying dispute

between the Counties and DSHS. The issues presented in the Counties' lawsuit have only tangential relation to the rights at issue in Trueblood. Without a federal claim or substantial federal question, the Court lacks jurisdiction to preside over this lawsuit. The discrete and unique state law issues concerning civil commitment evaluation and notice must instead be decided by the Pierce County Superior Court, the forum in which the Counties initially filed this lawsuit. For these reasons, the Court GRANTS Plaintiffs' Motion to Remand and REMANDS this action to Pierce County Superior Court. No fees or costs shall be awarded.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 26, 2023.

Marsha J. Pechman
United States Senior District Judge